# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL VENTURATO, | No. 4:18-CV-1243 |
| Plaintiff, | (Judge Brann) |
| v. | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | |
| Defendant. | |

## MEMORANDUM OPINION

### OCTOBER 24, 2018

## I. BACKGROUND

Plaintiff, Daniel Venturato, (hereinafter "Venturato"), filed a two-count declaratory judgment action demanding payment under an insurance policy from Defendant, State Farm Mutual Automobile Insurance Company (hereinafter "State Farm)." On June 20, 2018, State Farm removed the matter from the Centre County Court of Common Pleas to this Court. On June 27, 2018, State Farm filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The matter has now been fully briefed. For the reasons that follow, the motion will be granted and the case dismissed.

## II.    DISCUSSION

### A.    Motion to Dismiss Standard

When considering a motion to dismiss for failure to state a claim upon which relief may be granted,[1] a court assumes the truth of all factual allegations in a plaintiff's complaint and draws all inferences in favor of that party;[2] the court does not, however, assume the truth of any of the complaint's legal conclusions.[3]  If a complaint's factual allegations, so treated, state a claim that is plausible – *i.e.*, if they allow the court to infer the Defendant's liability – the motion is denied; if they fail to do so, the motion is granted.[4]

Additionally, I intend to accept and incorporate the policy documents that Defendant attached to its motion.  "Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself."[5]  Typically, to consider materials outside the complaint, a motion to dismiss must be converted to a motion for summary judgment.[6] However, "[c]onsideration of materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion."[7]  It is

---

[1]    Federal Rule of Civil Procedure 12(b)(6).

[2]    *Phillips v. Cnty. Of Allegheny*, 616 F.3d 224, 228 (3rd Cir. 2008).

[3]    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  *See also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3rd Cir. 2016).

[4]    *Id.*

[5]    *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

[6]    *See id.* and Fed. R. Civ. P. 12(d).

[7]    *Faulkner,* 463 F.3d at 134.

permissible to consider full text of documents partially quoted in complaint.[8] It is also permissible to consider documents relied upon by plaintiff in drafting the complaint and integral to the complaint.[9] "However, before materials outside the record may become the basis for a dismissal, several conditions must be met."[10] "For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."[11] It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.[12] In this matter, I find that these conditions have been met, and will consequently consider State Farm's attachments.

### B. Facts Alleged in the Complaint

The facts alleged in the complaint, which I must accept as true for the purposes of this motion, are as follows.

Venturato and his wife, Pauline Lomax, hereinafter "Lomax," both maintained individual auto insurance policies with State Farm, with each spouse named as insured on the other's policy.

---

[8] *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808–09 (2d Cir.1996).

[9] *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991).

[10] *Faulkner*, 463 F.3d at 134.

[11] *Id, See also e.g., Kaempe v. Myers*, 367 F.3d 958, 965 (D.C.Cir.2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir.2001).

[12] *Faulkner*, 463 F.3d at 134.

On January 20, 2014, Venturato was operating Lomax's vehicle and was involved in an automobile accident.[13] Progressive Insurance Company, the insurer of the operator of the other vehicle in the accident, tendered $15,000 to Venturato. State Farm accepted this amount as settlement of the tort claims against the other driver.

That $15,000 amount was, unsurprisingly, insufficient to cover Venturato's injuries; accordingly, Venturato submitted an underinsured motorist benefit claim to State Farm under Lomax's policy, (hereinafter "the Lomax policy"). State Farm then paid Venturato the $15,000 policy limit for uninsured motorist benefits under the Lomax policy.

Venturato next submitted a claim for underinsured motorist benefits under his own policy, (hereinafter "the Venturato policy"). However, this claim was rejected by State Farm on March 13, 2015, as Venturato had signed a form indicating his waiver of stacked underinsured motorist coverage. He had instead selected non-stacked underinsured motorist coverage.

Venturato filed the instant action for declaratory relief claiming that the waiver form was invalid and he should have been paid underinsured motorist benefits under both policies. In the alternative, he argues that if only one policy

---

[13]   ECF No. 1-1 at 5-6.

applies he should have been paid under his policy, the policy with the higher underinsured motorist benefit.

## C. Analysis

### 1. The waiver of stacked underinsured motorist coverage is enforceable.

The waiver of stacked underinsured motorist coverage is enforceable here pursuant to a Pennsylvania Supreme Court decision with virtually identical facts and policy language (the sole and inconsequential[14] difference being that action dealt with uninsured, rather than underinsured, motorist coverage).  In *Craley v. State Farm Fire & Cas*. Co.,[15] Justice Max Baer, writing for the majority[16] held that inter-policy stacking of uninsured coverage may be waived and the waiver language used by State Farm found valid.

---

[14] It is inconsequential in this fact scenario whether the issue is uninsured or underinsured motorist benefits as the statutory language and mandates discussed herein are identical as to both.

[15] 586 Pa. 484 (2006).

[16] Venturato argues for a different result based on the dicta found in Chief Justice Ralph Cappy's concurrence in *Craley* urging the General Assembly of Pennsylvania to rewrite the 75 Pa.C.S. § 1738(d)(1) to resolve the ambiguity the majority discusses by including the language "policy or the policies."   It is hoary law that a Federal District Court cannot rewrite state law willy nilly; instead I must follow "the law of the state [as] be declared by its Legislature in a statute or by its highest court in a decision." *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). *See also Scott v. Travelers Commercial Ins. Co.,* No. 1:14-CV-00535, 2016 WL 5851960, at *4 (M.D. Pa. Oct. 6, 2016), (Schwab, M.J.) reconsideration denied, No. 1:14-CV-00535, 2017 WL 6403010 (M.D. Pa. June 1, 2017), and appeal dismissed sub nom. *Scott v. Standard Fire Ins. Co.,* No. 16-4034, 2017 WL 5201526 (3d Cir. Sept. 19, 2017) (In applying the substantive law of Pennsylvania, I note that "the highest court of the state,—and for our purposes, the Supreme Court of Pennsylvania—is the final arbiter of what is state law.")  Clearly, I cannot find in Plaintiff's favor pursuant to dicta in a concurring opinion.

In that matter, "Jayneann M. Craley was killed in an accident attributed to the negligence of an uninsured drunk driver."[17] "Following the accident, Jayneann's husband, Randall Craley…sought and collected uninsured motorist benefits from State Farm pursuant to a policy for which Jayneann was the named insured."[18] "Craley[ next] sought uninsured motorist benefits under Randall Craley's [State Farm issued] motor vehicle insurance policy."[19] The *Craley* Court found the stacking waiver to be valid.[20] It reads:

> By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.[21]

The waiver in *Craley*, is identical to the Venturato waiver, with the exception of the terms 'uninsured' and 'underinsured,' as noted above. The Venturato waiver reads, as follows:

---

[17] *Id.* at 489.

[18] *Id.*

[19] *Id.*

[20] *Id.* at 504.

[21] *Id.* at 490-91.

**UNDERINSURED COVERAGE LIMITS**

By signing this waiver, I am rejecting stacked limits of Underinsured Motorist Coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

_Daniel A. Venturato_        6/30/90

Signature of First Named Insured: DANIEL A VENTURATO    Date

The language of the waiver form and the waiver itself are governed by 75 Pa.C.S.A. § 1738. It too contains identical waiver language in subsection (d). The entire statute reads as follows:

> (a) Limit for each vehicle.--When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

> (b) Waiver.--Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

> (c) More than one vehicle.--Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

> (d) Forms.--

---

[22]   ECF No. 4-2 at 14.

(1) The named insured shall be informed that he may exercise the waiver of the stacked limits of uninsured motorist coverage by signing the following written rejection form:

UNINSURED COVERAGE LIMITS

By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

Signature of First Named Insured
Date

(2) The named insured shall be informed that he may exercise the waiver of the stacked limits of underinsured motorist coverage by signing the following written rejection form:

UNDERINSURED COVERAGE LIMITS

By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

Signature of First Named Insured
Date

(e) Signature and date.--The forms described in subsection (d) must be signed by the first named insured and dated to be valid. Any rejection form that does not comply with this section is void.

The *Craley* Court further stated: "Subsection (b), which provides named insureds the option to waive stacked coverage, however, is silent as to its application to single-vehicle and multiple-vehicle policies."[23]  The Pennsylvania Supreme Court undertook an analysis of the intent of the legislative purposes underlying the statute, including cost containment; it "resolve[d the] ambiguity present in subsection (b) in favor of allowing consumers the choice to waive the coverage and thereby reduce their premiums."[24]

"However, the conclusion that inter-policy stacking may be waived [did] not end [the court's] analysis."[25] "Given the form required by subsection (d), the sanction provided in subsection (e), and the imperative language granting stacking to all insureds in subsection (a), it is readily apparent that some form of knowing waiver must occur before we allow enforcement of an inter-policy stacking waiver."[26]

The *Craley* Court had to determine if this waiver was sufficient notice to waiver inter-policy stacking.[27]  It found that it was, stating:

> We conclude that Randall had sufficient notice and that his waiver of inter-policy stacking was knowing. Randall signed the form stating, "I understand that my premiums will be reduced if I reject this

---

[23]  *Craley*, at 500.

[24]  *Id.* at 501.

[25]  *Id.* at 502.

[26]  *Id.*

[27]  *Id.* at 503.

coverage." Randall could not have thought he was receiving a reduced premium for waiving intra-policy stacking because there could be no intra-policy stacking with only one vehicle on "the policy." Absent the applicability of intra-policy waiver, the only interpretation fairly available to Randall was that his premium-reducing waiver applied to inter-policy stacking. Therefore, we conclude that the waiver is valid and enforceable under the facts of this case.[28]

Like Craley, Venturato could not have thought he was receiving a reduced premium for waiving intra-policy stacking because there could be no intra-policy stacking with only Venturato's vehicle on the policy. The only possible interpretation is that the premium-reducing waiver applied to inter-policy stacking between the Venturato and Lomax policies.

In conclusion, the *Craley* Court opined, as follows:

Therefore, we hold that inter-policy stacking can be waived and, in fact, was waived under the facts of this case. The waiver thus prevents the Craleys from recovering the "sum of the limits for each motor vehicle as to which the injured person is an insured." 75 Pa.C.S. § 1738(a). Instead, because State Farm paid the Craleys $30,000 under Jayneann's policy, which was the stated limit under both Jayneann's policy and Randall's policy, they cannot claim any additional benefit under Randall's policy.[29]

## 2. Venturato was correctly paid underinsured motorist benefits under the Lomax policy rather than the Venturato policy.

Venturato was operating his wife's vehicle at the time of the accident. He was therefore paid underinsured motorist benefits pursuant to the Lomax policy.

---

[28] *Id.* at 504.

[29] *Id.* at 505.

Venturato argues that if the Court finds, as I have, that he did in fact waive stacking, then the language of his policy requires that State Farm pay out according to his election for underinsured motorist coverage ($100,000), as opposed to the Lomax policy ($15,000), because the Venturato policy is the higher of the two policies in play.

Pennsylvania's Motor Vehicle Financial Responsibility Law mandates the priority of recovery when an insured is insured by multiple policies. It states, in relevant part:

§ 1733. Priority of recovery

(a) General rule.--Where multiple policies apply, payment shall be made in the following order of priority:
    (1) A policy covering a motor vehicle occupied by the injured person at the time of the accident.
    (2) A policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured.[30]

Pursuant to the statute, because Venturato is an insured on multiple policies, payment is made according to subsection (a)(1), the policy covering the motor vehicle occupied by the injured person at the time of the accident.

Additionally, contract interpretation is unnecessary here, despite both parties' representations to the contrary. "[S]tipulations in a contract of insurance in conflict with, or repugnant to, statutory provisions which are applicable to, and consequently form a part of, the contract, must yield to the statute, and are invalid,

---

[30]  75 Pa. C.S.A. § 1733(a).

since contracts cannot change existing statutory laws."[31]  Even if the terms of the

contract are "clear and unambiguous," they must yield to the statute as

"stipulations in a contract of insurance in conflict with, or repugnant to, statutory

provisions which are applicable to, and consequently form a part of, the contract,

must yield to the statute, and are invalid, since contracts cannot change existing

statutory laws."[32]

## III.    CONCLUSION

In this case only one policy applies pursuant to Venturato's waiver of

stacking.  That policy is the Lomax policy pursuant to Pennsylvania statute.

Venturato acknowledges that State Farm paid him the underinsured motorist

benefits pursuant to the policy.[33] Consequently, the action must be dismissed for

failure to state a claim.  State Farm's Motion to Dismiss pursuant to Rule 12(b)(6)

is therefore granted.

Venturato will not be granted leave to amend.  Although leave to amend

should be "freely granted," even when it has not been sought by Plaintiff, I decline

to provide leave to amend, as amendment would be futile here.[34]

---

[31]   *Prudential Prop. & Cas. Ins. Co. v. Colbert*, 572 Pa. 82, 88 (2002) (Zappala, C.J.) *citing* George J. Couch, Couch on Insurance 2d (Rev.ed) § 13.7 at 827 (1984).

[32]   *Colbert*, 572 Pa. at 89 *citing Allwein v. Donegal Mutual Insurance Co.,* 671 A.2d 744, 752 (1996).

[33]   Pl. Complaint, ECF No. 1-1 at ¶ 14-15.

[34]   *Shane v. Fauver*, 213 F.3d 113, 115–16 (3d Cir. 2000) ("Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted. *Lorenz v. CSX*

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

*Corp.*, 1 F.3d 1406, 1434 (3d Cir.1993)… In assessing futility, the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). *Id.*; 3 Moore's Federal Practice, § 15.15[3], at 15–47 to –48 (3d ed.2000).  Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency.)